

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MOSES FLORES, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:06-CV-523-A |
| | § | |
| LEAR OPERATIONS CORPORATION, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

Defendants, Lear Operations Corporation ("Lear") and Local Union 129, UAW ("the Union"), each has filed a motion for summary judgment on all remaining claims asserted against it by plaintiff, Moses Flores, Jr. ("Flores"), in the above-captioned action. Having considered the motions, the responses, the replies, the summary-judgment evidence, and the applicable legal authorities, the court concludes that both motions should be granted.[1]

---

[1] Defendants have both filed objections and motions to strike certain of Flores's summary judgment evidence, to which Flores has responded. In ruling on the motions for summary judgment, the court has taken into account the contents of defendants' motions and Flores's response in evaluating what weight, if any, to afford the evidence at issue.

I.

Flores's Claims

Flores alleges in his complaint that:

He was an employee of Lear and a member of the Union during such employment. In January 2006, Lear terminated Flores's employment. Lear and the Union discriminated against him because of his race and national origin, and retaliated against him because of his complaint of discrimination. His claims are brought under Title VII of the Civil Rights Act of 1964 and 28 U.S.C. § 1981.[2] Both Lear and the Union, according to Flores, gave preferential treatment to African-Americans over Hispanic and Caucasian employees. Flores's race is Caucasian and his national origin is Hispanic.

II.

The Motions for Summary Judgment

The Union claims that Flores's claims should be dismissed as a matter of law because: (1) Flores failed to exhaust his internal remedies within the Union; (2) Flores failed to exhaust his administrative remedies with the Equal Employment Opportunity Commission ("EEOC"); and (3) Flores's claims, at any rate, fail

---

[2]Although Flores also asserted a claim against defendants for fraud, that claim has been dismissed. See Oct. 16, 2006, Order.

substantively as a matter of law. Lear claims that Flores's claims fail substantively as a matter of law.

III.

Undisputed Summary Judgment Evidence

The following is an overview of evidence pertinent to the motion for summary judgment that is undisputed in the summary judgment record:

Flores was a truck driver at Lear from May 14, 2001, until Lear fired him on January 27, 2006. While Flores worked for Lear, he was a member of the Union.

As Flores was aware, Lear has a set of General Work Rules in effect at its Arlington plant. The Work Rules prohibit fighting (Rule 25); distribution of written materials without specific authority from management (Rule 18); the making or publishing of false, vicious or malicious statements concerning any employee, supervisor, the Company or its products (Rule 23); and employees coming on property other than their regularly scheduled work hours (Rule 32).

In April 2004, Flores and another Lear employee were terminated for fighting. Due to a grievance filed on his behalf by the Union, however, Flores's employment was reinstated in September 2004 pursuant to a Last Chance Agreement. Flores was

required to attend anger management training in connection with his reinstatement. Notably, the other employee terminated for fighting, a Caucasian male, was not reinstated.

In May 2005, Flores began publishing newsletters which he later titled the "Leer [sic] Conspiracy Times Journal" ("the Conspiracy Journal"), and by the time of his termination in January 2006, Flores had published 14 volumes of them. Lear received complaints about the Conspiracy Journals and determined that some of them contained inflammatory, racist, and sexist statements about other employees or groups of employees. Consequently, in the summer of 2005, Rick Harris ("Harris"), an assistant human resources manager and Leonard Fox ("Fox"), the site president, orally counseled Flores to stop distributing the Conspiracy Journals. After that, Fox counseled him a second time, telling Flores that he considered the Conspiracy Journals to be a violation of the Shop Rules and asking Flores to stop distributing them on company property. Flores continued to publish the Conspiracy Journals and distribute them.

The Conspiracy Journals span over forty pages, single-spaced. A few pertinent examples suffice. In Volume 6 of the Conspiracy Journal dated June 30, 2005, Flores wrote that a female Union representative who was off site counting votes from

4

an election got lost and ended up in "boystown" and was "being made to perform who knows what." The paper then suggests that she was sighted with several "clients" and was in "hog heaven." In another Journal, Volume 5 dated June 25, 2005, Flores referred to David Hayes, the senior truck driver, as the "senile driver." Flores also states that he was looking for Union representative Carol Phillips in her office but that "the only things [he] saw in her office would need a blacksmith to shoe them."

On August 8, 2005, Flores was put on a three-day suspension for publishing false, vicious or malicious statements in violation of Shop Rule 23. But he was undeterred. On August 14, 2005, Flores published Volume 9 of the Conspiracy Journal. Attached to it was a paper titled "What Is Your Southern Sign?," which, in turn, with racial undertones, spoofed horoscope signs. Flores described the "Southern Sign" of "Moon Pie" as follows:

> MOON PIE (March 21-April 20) You're the type that spends a lot of time on the front porch. A cinch to recognize the physical appearance of Moons, Big and round are the key words here. You should marry anybody who you can get remotely interested in the idea. It's not going to be easy. You have a big smile and are happy. This might be the year to think about aerobics. Maybe not.

On August 24, 2005, Volume 11 ensued. There, Flores commented on two African American co-workers: "Patrick and J. R. are only the

5

second generation of their family tree to be walking on their hind quarters."

On August 29, 2005, Flores was placed on a five-day suspension for repeated violations of Shop Rule 23 and told that he would be fired if he continued publishing the Conspiracy Journals. Shortly thereafter, Flores purportedly suffered an on-the-job injury and went on worker's compensation leave until January 17, 2006. While on leave, Flores published three additional volumes of the Conspiracy Journal. And on January 24, 2006, shortly after returning to work, Flores was again suspended for violating Shop Rule 23. While on suspension, Flores returned to the Lear Plant. When Lear realized that he was on company property while on suspension, Lear terminated Flores's employment for repeated violations of Shop Rule 23 and for coming on company property while on suspension in violation of Shop Rule 32.

The Union filed and successfully settled at least six grievances for Flores, including the reinstatement of his employment in 2004 after Flores was fired for fighting. In addition, on each occasion that Flores was disciplined by Lear for the Conspiracy Journals, the Union filed a grievance on his behalf. And in April 2006, the Union successfully resolved all of Flores's pending grievances, convincing Lear to reinstate

6

Flores's employment yet again--under a second Last Chance Agreement--and to pay Flores $6,486.40 in back pay. The only condition to reinstatement was that Flores was to agree not to violate Shop Rule 23 for one year. Flores, however, refused to accept the second Last Chance Agreement.

During his employment at Lear, Flores filed three charges of discrimination with the EEOC. The first was in 2004 over his first termination. In it, he claimed discrimination based on national origin and sex. This charge was disposed of in connection with Flores's 2004 reinstatement. On February 14, 2006, Flores filed his second charge over his 2006 termination. He alleged discrimination based on his national origin and further that he had been given harsher disciplinary treatment than some similarly situated African-American employees. In his third charge filed on May 9, 2006, Flores claimed that he had been discriminated and retaliated against based on his race and national origin. The EEOC issued no cause determinations on these latter charges on May 9, 2006, and June 21, 2006, respectively. This lawsuit ensued.

IV.

Analysis

A.  Applicable Summary Judgment Principles.

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477

U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597. See also Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

B. Other Applicable Legal Authorities.

As an initial matter, the court notes that, when used as parallel actions, as here, the standard of proof for Title VII

claims and Section 1981 claims is the same. See <u>Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 403-404, n.2 (5th Cir. 1999). Further, when the same facts underlie both claims, again as here, Title VII and Section 1981 claims are properly analyzed together. See <u>Roberson v. Alltel Info. Services</u>, 373 F.3d 647, 651 (5th Cir. 2004). Consequently, the court's references, analysis, and disposition of Flores's Title VII claims below encompass Flores's Section 1981 claim as well.

    1. <u>Title VII-Discrimination</u>.

        a. <u>Against Lear</u>.

Absent direct evidence of discrimination, as here,[3] a plaintiff may rely on circumstantial evidence to establish his Title VII claim, which, in turn, is analyzed under the evidentiary burden-shifting framework of <u>McDonnell Douglas Corp. v. Greene</u>, 411 U.S. 792 (1973). See, e.g., <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219, 222 (5th Cir. 2000). Under this framework, a plaintiff must first establish a prima facie case. See <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993). To make a prima facie case against Lear, Flores must prove that (1)

---

[3] Direct evidence is evidence that, if believed, proves the fact of intentional discrimination without inference or presumption. See <u>Portis v. First Nat. Bank of New Albany, MS</u>, 34 F.3d 325, 328-329 (5th Cir. 2004) (citations omitted). Contrary to Flores's assertion, the court has not found any direct evidence of discrimination in the summary judgment record.

he is a member of a protected group, (2) he was qualified for the position held; (3) he was subjected to an adverse employment action, and (4) he was replaced by someone outside the protected class or, in the case of disparate treatment, similarly situated employees outside his protected class were treated more favorably. See Okoye v. Univ. of Texas Houston Health, 245 F.3d 507, 512-13 (5th Cir. 2001). The court is not concerned in this case with the "replaced by someone outside the protected class" feature of the fourth element because plaintiff makes no such contention. He limits his argument as to the fourth element to a contention that he received disparate treatment allegedly evidenced by more favorable treatment given to similarly situated employees outside his protected class. To establish the fourth element based on alleged disparate treatment, Flores must demonstrate that Lear gave preferential treatment to similarly situated employees under "nearly identical circumstances." See Wheeler v. BL Dev. Corp., 415 F.3d 399, 405 (5th Cir. 2005), cert. denied, 546 U.S. 1061 (2005) (citation and internal quotations omitted).

If Flores establishes a prima facie case, a presumption of discrimination arises, and the burden then shifts to Lear to articulate a legitimate, nondiscriminatory reason for its

actions. Id.; Hicks, 509 U.S. at 506-07. If Lear meets this burden, the presumption of discrimination created by Flores's prima facie case disappears, and Flores must then meet his ultimate burden of persuasion on the issue of intentional discrimination. See Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005). To meet this burden, Flores must, in turn, offer evidence sufficient to create an issue of material fact that Lear's reason is not true, but is instead a pretext for discrimination.[4] Id. If Flores proves that the articulated reason is a pretext, summary judgment for Lear may still be appropriate if "no rational fact finder could find that the action was discriminatory." See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).

    b.    Against the Union.

To establish a prima facie Title VII claim against the Union, Flores must show that: (1) Lear, the employer, violated the collective bargaining agreement with respect to him; (2) the Union permitted the violation to go unrepaired, thus breaching

---

[4] If a plaintiff has direct evidence of discrimination, he may also meet the ultimate burden of persuasion on intentional discrimination under the so-called mixed-motive analysis, which, in turn, merely requires plaintiff to prove that discriminatory animus played a role in the decision. See Machinchick, 398 F.3d at 350. Because, however, Flores does not have direct evidence of discrimination, the mixed-motive analysis is irrelevant here.

the Union's duty of fair representation; and (3) there was some indication that the Union's actions were motivated by discriminatory animus. See, e.g., York v. American Tel. & Tel. Co., 95 F.3d 948, 955-56 (10th Cir. 1996).[5]

2. Title VII - Retaliation.

The McDonnell Douglas burden shifting also applies to Flores's claim of retaliation. See Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000). Thus, Flores must first establish a prima facie case of retaliation. Id. A prima facie case requires Flores to show: (1) that he engaged in protected activity; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. Id. If plaintiff makes out a prima facie case, defendants then have an opportunity to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. If they successfully do so, the

---

[5]Flores and the Union agree that the applicable legal test to Flores's discrimination claim against the Union is different than the test against Lear. While there does not appear to be any Fifth Circuit authority directly supportive of this other test, the court is content to analyze Flores's discrimination claim against the Union as those parties have framed it. In this vein, the court notes that at least one unpublished case from the Northern District of Texas has applied the test relied upon by Flores and the Union. See Antoine-Tubbs v. Local 513, et al., 1997 WL 527318, at *2 (N.D. Tex. Aug. 19, 1997). Moreover, regardless of what test applies, the court is amply satisfied that there is no competent summary judgment evidence of discriminatory intent on the part of the Union against Flores. Thus, either way, summary judgment for the Union is proper.

burden shifts to Flores to show that the proffered reason is a pretext for unlawful retaliation. Id. (citation omitted).

The ultimate determination in a retaliation case is whether the plaintiff's protected conduct was a "but for" cause of the adverse employment action. Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1121-22 (5th Cir. 1998) (citing Long v. Eastfield College, 88 F.3d 300, 308 (5th Cir. 1996)). "In other words, even if a plaintiff's protected conduct is a substantial element in defendant's decision to terminate an employee, no liability for unlawful termination arises if the employee would have been terminated even in the absence of the protected conduct." Long, 88 F.3d at 305 n.4. In order to withstand a motion for summary judgment, the plaintiff must reveal a conflict in substantial evidence on the ultimate issue of retaliation. Sherrod, 132 F.3d at 1122. "Evidence is substantial if it is of 'such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions.'" Id. (citation omitted).

C.  Application of Law to Flores's Claims.

   1.  Matters Properly Not Considered.

       a.  The 2004 Termination.

In order to streamline the relevant legal and factual issues properly before the court, the court concludes that any claim of discrimination or retaliation by Flores based on his 2004 termination by Lear is time-barred and irrelevant. While Flores filed a claim with the EEOC after his 2004 termination, he withdrew that charge after his employment was reinstated. Thus, the only live charges of discrimination and retaliation filed by Flores with the EEOC were those he filed on February 14, 2006, and May 9, 2006.

Because Flores's 2004 termination occurred more than 300 days prior to the 2006 charges with the EEOC, any complaint Flores may have based on his 2004 termination is time-barred. See Webb v. Cartdiathoracic Surgery Associates, 139 F.3d 532, 537 (5th Cir. 1998); see also United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977) ("A discriminatory act which is not made the basis for a timely charge . . . is merely an unfortunate event in history which has no present consequences.") Further, Flores's 2004 termination was obviously a discrete event that should have alerted--and, in fact, did alert--Flores of any potential Title

VII violation. Thus, Flores cannot credibly claim that limitations should be tolled under the continuing violation theory. Webb, 139 F.3d at 537.

  b. <u>Facts Urged by Flores Without Citation to the Record</u>.

In response to both Lear's and the Union's motion for summary judgment, Flores recites pages of purported facts without any citation to the summary-judgment record. The district court has no duty to sift through record in search of evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Any facts alleged by Flores or any other party without accurate citation to the summary-judgment record will thus not be considered by the court.

 2. <u>Flores's Discrimination Claims Under Title VII Fail Against Both Lear and the Union</u>.

  a. <u>Against Lear</u>.

Flores has failed to establish a prima facie case of discrimination against Lear. Among the deficiencies with this claim, Flores has failed to meet the fourth requisite element by showing that similarly situated employees outside his protected class were treated more favorably. Okoye, 245 F.3d at 512. Again, this requires Flores to demonstrate that Lear gave

16

preferential treatment to the similarly situated employees under "nearly identical circumstances." Id. at 513; Wheeler, 415 F.3d at 405.

In the Conspiracy Journals, Flores made numerous malicious, racist, or sexist remarks about Lear employees and Union representatives. Flores's bald contention that the Conspiracy Journals were merely his avenue of voicing his opinions on union politics is absurd. Despite being warned repeatedly about violating Shop Rule 23, Flores persisted. Flores offers no evidence of any other employee similarly situated to himself who received preferential treatment under nearly identical circumstances. Because Flores has failed to satisfy the fourth element of his prima facie case, summary judgment for Lear on Flores's discrimination claim is proper.

Summary judgment is proper as to the discrimination claim on the further ground that Lear has articulated legitimate, nondiscriminatory reasons for the adverse employment action it took against Flores. Undisputed in the summary judgment record is the evidence that Lear's reasons for terminating the employment of Flores were his repeated violations of Shop Rule 23 and his conduct in coming on the property while under suspension. in violation of Shop Rule 32. Also undisputed in the summary

judgment record is the evidence that Flores's suspension was because of his violation of Shop Rule 23. Flores has adduced no summary judgment evidence that the articulated reasons were pretext for discrimination.

    b.    <u>Against the Union</u>.

Flores's claim against the Union fails for multiple reasons. He has adduced no summary judgment evidence raising an issue that the Union violated the collective bargaining agreement with respect to him. From that, the conclusion follows that there is no summary judgment evidence that the Union permitted any such violation to go unrepaired--thus, there is no evidence that the Union breached its duty of fair representation. Finally, there is no summary judgment evidence that any action taken by the Union was motivated by discriminatory animus.[6]

    3.    <u>Flores's Retaliation Claims Fail Against Both Lear and the Union</u>.

The court need only consider one of the grounds assigned by Lear and the Union for grant of summary judgment as to the retaliation claims. The summary judgment record is devoid of any evidence of a causal connection between the filing by Flores of

---

[6] The court finds unnecessary to discuss other grounds assigned by the Union for grant of summary judgment.

complaints of discrimination and any adverse employment action taken against him or any action taken by the Union. Even if he had made out a prima facie case, Lear and the Union have articulated legitimate, nondiscriminatory reasons for their conduct; and, Flores has offered no summary judgment evidence that such reasons were not true but, instead, were pretext for discrimination. Therefore, summary judgment is proper as to the retaliation claims.

V.

Order

For the reasons discussed above, the court concludes that both motions for summary judgment should be granted. Therefore,

The court ORDERS that all claims and causes of action asserted by Flores in the above-captioned action against Lear and the Union be, and are hereby, dismissed.

SIGNED September 24, 2007.

JOHN McBRYDE
United States District Judge